**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **TONY DEROSA-GRUND** | § | **Case No. 09-33264-- H4** |
| | § | |
| **DEBTOR.** | § | **(Chapter 7)** |

**OBJECTION TO THE TRUSTEE'S APPLICATION TO COMPROMISE**
**CONTROVERSY UNDER BANKRUPTCY RULE 9019**
[This Objection Relates to Dkt. No. 306]

**To the Honorable Jeff Bohm,**
**United States Bankruptcy Judge:**

New Line Productions, Inc. ("New Line") a creditor[1] and party in interest in the above

captioned chapter 7 bankruptcy case, files this *Objection to the Trustee's Application to*

*Compromise Controversy Under Bankruptcy Rule 9019* (the "9019 Motion") [Dkt. No. 306], and

in support of the objection, respectfully states as follows:

**Summary of the Objection**

On January 22, 2016, this Court made the following ruling:

> Whatever else happens, this Debtor will never again be able to have a scintilla of
> an argument that he has standing to bring suit on the grounds that he has an
> interest in the Treatment and that therefore he is entitled to damages for its
> misappropriation.  It is time to put a stop to the Debtor's vexatious and fraudulent
> litigation tactics.

*Memorandum Opinion* at page 69.  New Line categorically opposes the proposed compromise.

Not only would it serve as an end-run around this Court's prior orders, the proposed compromise

fails to protect the integrity of the process that was so abused and violated by the Debtor.  In

short, "never again" should mean never again.  The Debtor wants the corporate entities (i) to

---

[1] New Line is a creditor with respect to the fees and expenses associated with the show cause proceeding.

17935531v.5

continue his vexatious and fraudulent litigation by using these entities as a vehicle to sue New Line, (ii) to avoid consequences from this Court's Memorandum Opinion and Order of January 22, 2016, and (iii) to collaterally attack the December 16, 2016 Order [Dkt. No. 263] approving the Trustee's settlement with New Line by fraudulently asserting that "other versions of the Treatment" are owned by the corporate entities, even though such "other versions of the Treatment" are substantively identical to the Treatment acquired by New Line in the December 16, 2016 Order.  For these reasons, and additional reasons set forth below, the 9019 Motion should be denied.

### Factual Background

1.      On May 7, 2009, an involuntary chapter 7 petition was filed against the Debtor [Dkt. No. 1].

2.      On June 8, 2009, an Order for Relief was entered [Dkt. No. 11].

3.      On July 10, 2009, the Debtor filed his original schedules, **which listed ownership of Evergreen Media Group, LLC** ("EMG") [Dkt. No. 19].  In the original schedules, the asset was valued at $1,000.00.

4.      On February 4, 2015, a judgment was entered in a JAMS arbitration involving New Line, the Debtor, Silverbird Media Group, LLC ("Silverbird"), EMG and Evergreen Media Holdings, LLC ("EMH").[2]  The judgment held that "[t]he [Option] Quitclaim [Agreement] and PLA [Producer Loanout Agreement] clearly, repeatedly, consistently and unequivocally grant all rights to 'The Conjuring' project, including all copyright and trademark rights, to New Line, except as quitclaimed or assigned back to DeRosa-Grund."[3]  *See* Exhibit A at p. 23.

---

[2] Silverbird, EMG, and Evergreen are collectively referred to as the "Evergreen Parties."

[3] The term "DeRosa Grund" is defined in the judgment to include both the Debtor and the Evergreen Parties.  The rights that were quitclaimed back to the Debtor and the Evergreen Parties are limited and have no connection to the

17935531v.5

5.      On September 23, 2015, the Debtor filed a motion to reopen this case [Dkt. No. 92). The Debtor alleged that the Treatment was authored by him prior to the petition date (on or about 1992) and was inadvertently omitted from his original schedule of assets. *Id.*

6.      On January 22, 2016, the Court entered its *Memorandum Opinion* [Dkt. No. 122] and *Order* [Dkt. No. 123] reopening this case and requiring the Debtor to file amended schedules. The Court found that the Treatment is property of the estate, and the Trustee has a duty to administer the asset and maximize its value [Dkt. No. 122]. **The Court further found that Silverbird was owned by the Debtor prior to the petition date and should have been scheduled as an asset**. *Id*. at n. 20.

7.      Further, the Court held that the Debtor "lost his standing to object to any proposed disposition of the Treatment by the Trustee because the Debtor is barred from receiving any benefit due to his failure to disclose this asset." *See* Dkt. No. 122 at p. 67.[4]

8.      Finally, and decisively, the Court also held that the Debtor was **"barred from receiving any benefits, <u>monetary or otherwise</u>, from the Chapter 7 Trustee's administration of the Treatment <u>or any other asset</u> that the Debtor did not initially disclose."** *See* Dkt. No. 123 at p.2.   (emphasis supplied). This would include Silverbird.

9.      On March 1, 2016, the Debtor filed amended schedules and an amended statement of financial affairs [Dkt. Nos. 161 and 162]. This first set of amended schedules did not comply with the Court's Order, categorically asserting the 5th Amendment for each item.    It was only after a show cause hearing that the Debtor filed another set of amended schedules [Dkt No. 199].

10.      The Debtor's amended schedules state: "Pursuant to the Court's January 22, 2016

---

Treatment.
[4] This Order has been on appeal for over a year. It has not been stayed., and the Debtor has missed the deadline set by Judge Lake to file his opening brief (March 3, 2017).

17935531v.5

order [Dkt. No 123], Mr. DeRosa-Grund files this amended Schedule B.  However, in light of the Court's Memorandum Opinion [Dkt. No. 122], Mr. DeRosa-Grund elects to assert his privilege to remain silent under the Fifth Amendment regarding any remaining amendments/matters identified in Doc. No. 123.  *See Ohio v. Reiner*, 532 U.S. 17, 18 (2001) (privilege 'protects the innocent as well as the guilty')."

11.     The amended schedules list the Treatment and Silverbird as assets, each with a listed value of $0.00.  EMG remained listed as an asset as it appeared in the original schedules, valued in the amount of $1,000.00 [Dkt. No. 199].

12.     On March 3, 2017, New Line offered to purchase the ownership interests in (or certain assets owned by) Silverbird and EMG for $9,000 and $10,000 respectively, contingent on completion of reasonable due diligence and an acceptable form of a bill of sale.  To date, the Trustee has not responded to New Line's offer.

### History of Vexatious Litigation

13.     The Debtor has a well-documented history of bringing a litany of unsuccessful lawsuits in the Southern District of Texas regarding *The Conjuring* (including, specifically, the Treatment, in some cases so-named and in others referred to generally).  The Debtor has brought at least five suits in this district all regarding essentially the same facts, with the most recent resulting in Judge Bennett's finding that the Debtor's litigious conduct "might suggest an abuse of the judicial process" and warning that if such behavior continued, "sanctions would likely be appropriate":[5]

---

[5] *Derosa-Grund v. Time Warner Inc*, No. 4:15-CV-02763, 2015 WL 12806619, at *2 (S.D. Tex. Dec. 22, 2015) (Bennett, J.).

17935531v.5

| S.D. Tex. Case No. (Judge) | Opinion/Result |
|---|---|
| 4:15-CV-02763 (Judge Bennett) | *Derosa-Grund v. Time Warner Inc*, No. 4:15-CV-02763, 2015 WL 12806619 (S.D. Tex. Dec. 22, 2015) (dismissing in favor of arbitration and warning that if Debtor brought another similar suit in this District, "sanctions would likely be appropriate") |
| | |
| 4:15-cv-02273 (Judge Atlas) | *Tony DeRosa-Grund v. Time Warner Inc., Warner Bros. Enter. Inc., New Line Productions, Inc., Chad Hayes, Carey Hayes, and Peter Safran* (voluntarily dismissed without prejudice) |
| | |
| 4:14-cv-03019 (Judge Werlein; reassigned to Judge Hughes) | *Tony DeRosa-Grund and The DeRosa-Grund Family Trust v. New Line Cinema LLC and Craig Alexander* (S.D. Tex.) (Debtor dismissed the case within hours of the reassignment to Judge Hughes) |
| | |
| 4:14-cv-00793 (Judge Rosenthal) | *Evergreen Media Holdings v. Warner Bros. Entm't*, No. H-14-0793, 2014 WL 5681852 (S.D. Tex. Nov. 4, 2014) (Rosenthal, J.) (dismissing in favor of arbitration) |
| 4:14-cv-01117 (Judge Hittner but consolidated with Judge Rosenthal's 4:14-cv-00793) | |
| | |
| 4:14-cv-1634 (Judge Harmon) | *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664 (S.D. Tex. 2014) (Harmon, J.) (finding Court lacked personal jurisdiction over Defendants The Safran Company and Peter Safran and transferring the case to the Central District of California). |

14.    Based on this history, as well as numerous other Conjuring-related lawsuits that the Debtor has brought in other jurisdictions, it is not a stretch to believe that the Debtor's chief goal of reacquiring EMG and Silverbird is so that he can use them as a vehicle for future lawsuits

against New Line.

### The Interpleader

15.    On November 11, 2009, New Line, on the one hand, and Company (whose definition is discussed further below), on the other hand, entered into the Option Quitclaim Agreement ("OQA"), pursuant to which Company sold "all right, title and interest" in a project referred to as "The Conjuring" to New Line.   The OQA defines "Company" to include the Debtor, EMH, EMG, and Silverbird jointly and collectively without further delineation. Pursuant to the OQA, New Line produced the theatrical motion picture entitled *The Conjuring*, which was released by New Line in July 2013.

16.    The OQA contains a provision governing the payment for theatrical sequels and remakes, which provides in relevant part that:

> Company shall be entitled to the following additional payments . . . [i]f an English language feature-length live-action theatrical sequel [is produced] . . . **a sum equal to 100% of the Purchase Price** . . . payable 50% within 10 days of the commencement of principal photography of each such sequel . . . and 50% within 10 days following the completion of principal photography of each such sequel . . . .

(Exhibit B § 5(b) (emphasis added).)

The "Purchase Price" for *The Conjuring* was $750,000 (the "Sequel Payment").

17.    The OQA does not specify that any portion or percentage of the Sequel Payment is payable to the Debtor versus EMG, EMH, or Silverbird.   Instead, the OQA states that the entire Sequel Payment shall be made to "Company," which under the OQA is to the Debtor, EMG, EMH, and Silverbird jointly and collectively and without further delineation.

18.    On June 14, 2016, New Line filed an interpleader complaint initiating Adversary Proceeding No. 16-3137 (the "Interpleader").   In its complaint, New Line sought to interplead a Sequel Payment in the amount of $750,000 to the "Company" for a movie titled "Annabelle 2".

19.     The Debtor entities claimed that  the Sequel Payment was owed to EMH under the terms of the OQA.  The Trustee, on the other hand, claimed that the Sequel Payment, owed under the terms of the OQA to "Company", should be sent to her, since the Trustee owns and controls interests in two of the three entities included in the term "Company" through the Debtor's bankruptcy – Silverbird and EMG.[6]

20.     At a hearing  in the  Interpleader on July 7, 2016, counsel for the Trustee, on the one hand, and counsel for the Debtor, Silverbird EMG, and EMH ( the "Evergreen Parties") on the other hand, presented a proposed form of Stipulation and Agreed Order to resolve the Interpleader.  New Line objected to entry of the July 7 Order unless the proposed compromise was first presented and noticed under Federal Rule of Bankruptcy Procedure 9019.

21.     After  such  notice,  the  Court  approved  the  proposed  compromise  of  the Interpleader, allowing the distribution of $300,000 to the Trustee (who, on behalf of the Estate, had asserted an entitlement to payment via her ownership interests in Silverbird and EMG), and the remainder of $450,000 to EMH.  New Line, for its part, was discharged from any and all liability related to this Sequel Payment.  The Interpleader, however, remains open in the event future Sequel Payments become due and owing.[7]

## The Prior 9019 With New Line

22.     On December 16, 2016, the Court approved a compromise between the Trustee and New Line, whereby, in exchange for a quitclaim transfer of the estate's interest in the

---

[6] The Trustee's position set forth in her June 2, 2016 letter (Exhibit C) with respect to the Sequel Payment is based solely on her ownership of two of the entities included in the definition of "Company" under the OQA.  The motion picture project "Annabelle 2" is completely unrelated to the treatment that was the subject of Debtor's motion to reopen his bankruptcy (the "Treatment").

[7] Upon information and belief, as many as two $750,000 Sequel Payments could become due and owing in 2017 alone.  Pursuant to the Court's Order of December 16, 2016, New Line intends to interplead these Sequel Payments into the registry of the Court.

17935531v.5

Treatment and a release of any and all claims and causes of action the estate may have against it, New Line agreed to pay the estate (and has since paid the estate) the sum of $200,000.00.    For New Line's part, the objective of this compromise was to finally put an end to the Debtor's litigation stalking of New Line.

23.    The Evergreen Parties initially objected to the proposed compromise [Dkt. No. 238].[8]  On November 2, 2016, the Trustee filed a Motion to Strike the objection, alleging that the Evergreen Objecting Parties were acting as the proxy for the Debtor and that the Debtor was controlling the Evergreen Parties and causing them to take actions the Debtor himself was prohibited from taking [Dkt. No. 240].  The Trustee sent the Evergreen Parties discovery regarding the question of who was controlling the Evergreen Parties. On December 9, 2016, the Trustee filed a motion to compel [Dkt. No. 252].

24.    The Evergreen Parties withdrew the objection in exchange for the Trustee not pursuing the Motion to Compel and agreeing not to seek sanctions against the Evergreen Parties [Dkt. No. 258]. As a result, the Evergreen Parties did not answer the question of who was controlling their actions. At the conclusion of the December 16, 2016 hearing, and without any opposition from counsel for the Evergreen Parties (who appeared at the hearing telephonically), the Court approved the compromise between the Trustee and New Line [Order Approving

---

[8] Amazingly, the objection contained the following allegation: "Although the Evergreen Parties contest the transfer of any of the treatments were properly effectuated by the agreements with New Line, **there is no question that there are multiple treatments, one owned individually that is now property of the Debtor's estate and two others owned corporately that are not property of the estate**."  This false allegation is yet another blatant attempt by the Debtor to skirt around the injunctions contained in the Court's *Memorandum Opinion and Order*.  As shown by the attached redline comparison [Exhibit D], the 2008 "alternative version" is substantively identical to the Treatment that the Debtor initially failed to schedule, which is now owned by New Line. While it is not clear what other versions the Evergreen Parties claim to own, what is clear is that there is only one Treatment, and that Treatment is now owned by New Line.   In the event that this Court decides to approve this proposed compromise, New Line respectfully requests that the Court, pursuant to Paragraph 8 of its December 16 Order, determine the "ownership of the Treatment and any asserted different versions thereof" and find that the purported 2008 version is substantively identical to the Treatment and is owned by New Line.

17935531v.5

Compromise, Dkt. No. 263].

25.     Prior to approval, however, the Court expressed the following concerns about the proposed compromise:

> As I've made clear today, I got concerned about what was going on in this arbitration because I don't want to be approving the Settlement that would allow the Debtor to benefit from the Trustee's administration of the treatment or any other asset that the Debtor did not initially disclose. And this Silverbird Media Group, LLC wasn't initially disclosed. It was subsequently disclosed after I ordered the Debtor to amend his Schedules. And so while the arbitrator in California has already issued a ruling, as we know it's on appeal so there's always a chance that the appellate JAMS panel could issue a ruling that would somehow lead the Debtor to benefit from that ruling with respect to Silverbird Media Group, LLC, i.e., with respect to an asset that he didn't disclose.

*Transcript*, Hearing on December 16, 2016, p. 66 [Dkt. No. 272].  Based on these concerns, language was added to the proposed Order whereby the Court would retain exclusive jurisdiction over the proceeds of the JAMS Proceeding and any rights or proceeds arising out of the Estate's interest in Silverbird and EMG, which would include any Sequel Payments.  With that addition, the Trustee's settlement with New Line was approved [Dkt. No. 263].

26.     Despite the lack of any objection (oral or written, raised or asserted) at the December 16 hearing, on December 30, 2016, the Evergreen Parties filed their Notice of Appeal of the Order Approving Compromise ("Objection") [Dkt. No. 267].  That appeal was ultimately dismissed, but only after (i) the Debtor and the corporate representatives of Silverbird, EMG and EMH were ordered to appear and show cause why they should not be held in contempt, and (ii) admission by Mr. DeRosa-Grund that he is corporate representative of Silverbird, EMG and EMH.

**Objection**

*a.      The Proposed Settlement Does Violence to Prior Orders*

27.      The proposed settlement, if approved, would violate at least two of this Court's prior orders.  First, in the *Order*, the Court ordered that "the Debtor is barred from receiving any benefits, monetary or otherwise, from the Chapter 7 trustee's administration of the Treatment or any other asset that the Debtor did not initially disclose."   Allowing the abandonment of Silverbird to the Debtor (an asset that the Debtor failed to initially disclose) would render this important feature of the Order meaningless, and it would reward the Debtor's bad behavior.

28.      Second, the proposed compromise would modify the Court's Order of December 16, 2016, which approved a compromise between the Trustee and New Line.  Essential to that compromise (and a requirement for approval by this Court) was the retention of exclusive jurisdiction over the Treatment and any other asset that the Debtor failed to initially disclose on his schedules.  This compromise, however, throws those key provisions aside, thereby modifying the Court's prior order, and robbing New Line of the benefit of the bargain it made with the Trustee – namely the peace (releases) it acquired in exchange for $200,000.

*b.      Value of the Assets*

29.      Central to the Trustee's Motion to Compromise is the unsupported conclusion that Silverbird and EMG (each owned 100% by the Debtor) have no value.  This conclusion fails for a number of reasons.  First, the "no value" conclusion is ostensibly based on the Debtor's amended schedules, on which the Debtor was previously found to have lied, and on which the Debtor currently asserts the Fifth Amendment.  Further, the proposed settlement neither includes a disclosure of assets by the entities, nor an independent valuation of their worth, making it impossible for the Trustee or this Court to know the real value of the assets being abandoned to

the Debtor.

30.     Second, the "no value" conclusion is also disputed by the Evergreen Parties, which we now know are controlled by the Debtor:

> Although the Evergreen Parties contest the transfer of any of the treatments were properly effectuated by the agreements with New Line, **there is no question that there are multiple treatments, one owned individually that is now property of the Debtor's estate and two others owned corporately that are not property of the estate**.

*Objection to the Trustee's Application to Compromise Under Bankruptcy Rule 9019; Declaration of David Lake*, p.3. [Dkt. No. 238].   While New Line disagrees with this legal conclusion, the allegation clearly shows Mr. DeRosa-Grund's hand.   Based on his past litigious behavior, New Line anticipates that Mr. DeRosa-Grund will use his ownership in the two entities to claim that they own other "versions" of the Treatment and will sue New Line for infringement of same.   Such a result would be incongruous with the stated objectives of the *Memorandum Opinion and Order*.

31.     Furthermore, if the corporate entities truly have "no value," then one must ask the question, why does the Debtor want them back?   The answer is so that he has yet another vehicle in which to continue his scorched earth and vexatious litigation against New Line.   In its *Memorandum Opinion*, the Court foresaw this possibility in the context of the Treatment:

> Although the Debtor is barred under *Reed* from receiving any benefit from the Trustee's administration of the Treatment, the Debtor could still wind up with title to this asset revesting in his name. **Such a result would accord him the standing that he needs to file yet another lawsuit against New Line once again alleging that New Line has wrongfully appropriated the Treatment and needs to pay him damages for so doing.** Under this scenario, there is a possibility that the Debtor could end up pocketing money himself. Such a result would undermine the very purpose of judicial estoppel.

*Memorandum Opinion*, pp. 68-69 (emphasis added).   This same logic extends to other assets that

the Debtor failed to schedule (Silverbird) or properly value (EMG).  Application of this logic is especially important here as the Debtor (through the corporate entities) is now claiming to have an interest in other alleged "versions" of the Treatment (which are, in fact, substantively identical to the Treatment he intentionally failed to schedule and which New Line purchased from the Trustee via the Court's December 16, 2016 Order).[9]  These fraudulent assertions of alternative "versions" owned by corporate entities should be seen for what they are -- a feckless magician's sleight-of-hand parlor trick.  This collateral attack on the Court's December 16, 2016 Order should not be tolerated.

32.     Furthermore, as evidenced by the disposition of the Interpleader, Silverbird and EMG have real value going forward, as each holds an undefined interest in any future Sequel Payments.   New Line anticipates that as many as two Sequel Payments could become due and owing in 2017 alone.  Per the Court's December 16, 2016 Order, New Line intends to interplead these payments into the Court's registry, and request that the Court determine the allocation between the contractual parties under the OQA (including Silverbird and EMG).

33.     Likewise, Silverbird and EMG (or their assets) have value to New Line, as evidenced by offers made by New Line to purchase the ownership interests (or assets) of Silverbird and EMG, respectively, for a total of $19,000.00.[10]

34.     Finally, the Trustee's argument that there is a risk of reversal on appeal only applies to the narrow issue of whether or not excess proceeds can be distributed to charity.

---

[9] Attached as Exhibits E and F, are the "versions" of the Treatment that were quitclaimed by the Court's December 16, 2016 Order, as well as a redline comparison [Exhibit D] of the "versions" of the Treatment demonstrating that they contain no substantive changes from the Treatment which Debtor purportedly copyrighted in 1992. Any claim by Debtor that the substantially identical later treatments are separately copyrightable is wholly unsupported by copyright law. Moreover, to the extent the "versions" of the Treatment are purportedly owned by corporations not subject to this bankruptcy then they were transferred under the OQA as affirmed by the Final Award in the JAMS arbitration.

[10] True and correct copies of the offer letters are attached as Exhibits G and H.

Despite Judge Lake's skepticism on this narrow point, the Fifth Circuit endorsed this approach in *In re Jackson*. While this Fifth Circuit decision may not be "binding," it is instructive, persuasive, and on point. Even if this Court were to be reversed on this narrow, discrete issue, it should not impact the balance of this Court's rulings. There is simply no good reason to approve a proposed compromise that would, in effect, eviscerate the very *sine qua non* of the *Memorandum Opinion and Order*: protecting the integrity of the system from further abuse by a vexatious and fraudulent litigant.

c.      *Approving the Proposed Compromise Would Not Protect the Integrity of the System*

35.      New Line understands the Trustee's desire to bring this case to a conclusion. However, allowing the Trustee to abandon to the Debtor corporate entities with unknown and potentially valuable assets (directly in violation of one prior Order, and teeing up the violation of a second Order) in exchange for the dismissal of frivolous appeals is simply rewarding the Debtor for continuing his vexatious litigation tactics. It sends a message that a party can lie to the Court and cheat the system, so long as he waits out the clock. Such a message clearly does not serve the interests of justice.

36.      New Line reserves its rights to assert any additional objections or concerns at or prior to the hearing on the 9019 Motion.

**Conclusion**

Based on the foregoing, New Line respectfully requests that this Court enter an Order (i) denying approval of the proposed compromise between the Debtor and the Trustee, and (ii) granting to New Line any other relief to which it is justly entitled.

DATED: March 7, 2017.

17935531v.5

Respectfully submitted,

**Jackson Walker LLP**

By:/s/

Bruce J. Ruzinsky (SBN 17469425)
Matthew D. Cavenaugh (SBN 24062656)
Email: mcavenaugh@jw.com
William S. Stowe (SBN: 24075124)
JACKSON WALKER L.L.P.
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752 - 4200 (Telephone)
(713) 308 - 4184 (Facsimile)

**Counsel New Line Productions, Inc.**

**Of Counsel:**
**Jackson Walker L.L.P.**
Charles L. "Chip" Babcock
State Bar No. 01479500
S.D. ID # 10982
Attorney-in-Charge
cbabcock@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax

## Certificate of Service

I hereby certify and verify that on March 7, 2017, the forgoing instrument was served via CM/ECF to all parties registered to receive electronic notice, and by first class mail on March 8, 2017 to all parties listed below:

Tony Derosa Grund
923 High Meadow Ranch Drive
Magnolia, TX 77355

Evergreen Media Holdings, LLC
923 High Meadow Ranch Drive
Magnolia, TX 77355

Evergreen Media Group, LLC
923 High Meadow Ranch Drive
Magnolia, TX 77355

Silverbird Media Group, LLC
923 High Meadow Ranch Drive
Magnolia, TX 77355

Johnie J Patterson
Walker & Patterson,P.C.
P.O. Box 61301
Houston, TX 77208-1301
713-956-5577
Fax : 713-956-5570
Email: jjp@walkerandpatterson.com
**Counsel for Debtor**

Aaron James Power
Porter Hedges LLP
1000 Main 36th Flr
Houston, TX 77002
713-226-6631
Fax : 713-226-6231
Email: apower@porterhedges.com
**Counsel for Eva S. Engelhart,
Chapter 7 Trustee**

.

By:/s/
   Matthew D. Cavenaugh